**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MONTROSE ENVIRONMENTAL GROUP, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 20-834-RGA-SRF |
| DHANANJAYA R. YEDDULA | ) ) ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

**I.   INTRODUCTION**

Presently before the court in this breach of contract action is a motion filed by defendant Dhananjaya R. Yeddula ("defendant") to dismiss for improper venue or failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(3) or 12(b)(6), or to transfer venue pursuant to 28 U.S.C. § 1406 or 28 U.S.C. § 1404(a).[1]  (D.I. 6)  The court has jurisdiction pursuant to 28 U.S.C. § 1332.  For the following reasons, defendant's motion to transfer venue is DENIED.  In addition, the court recommends that defendant's motion to dismiss be DENIED.

**II.   BACKGROUND[2]**

On May 15, 2020, plaintiff Montrose Environmental Group, Inc. ("plaintiff") originally filed this contract action against defendant in the Court of Chancery of the State of Delaware.  (D.I. 1 at ¶ 1)  On June 22, 2020, defendant properly removed the case to this court pursuant to 28 U.S.C. § 1446.  (D.I. 1)  On July 1, 2020, defendant filed this pending motion to dismiss or, in

---

[1] Defendant's opening brief in support of his motion is D.I. 7, plaintiff's answering brief is D.I. 12, and defendant's reply brief is D.I. 15.

[2] The facts in this section are based upon allegations in the complaint, which the court accepts as true for the purposes of the present motion to dismiss.  *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

the alternative, transfer venue to the United States District Court for the Southern District of Texas. (D.I. 6)

Plaintiff is a Delaware corporation and has its principal place of business in Irvine, California. (D.I. 1, Ex. A at ¶ 1) Plaintiff is an environmental company that offers "air quality, environmental laboratory, and regulatory compliance services." (*Id.* at ¶ 5) Defendant is an individual who resides in Spring, Texas. (*Id.* at ¶ 2)

On March 15, 2019, plaintiff purchased substantially all of the assets of Golden Specialty, Inc., defendant's employer. (*Id.* at ¶ 8) On March 16, 2019, defendant accepted an employment offer to serve as Technical Director in a laboratory located in Deer Park, Texas, in suburban Houston, for Enthalpy Analytical LLC ("Enthalpy"), plaintiff's subsidiary. (*Id.* at ¶¶ 6, 8) As plaintiff's Technical Director, among other duties, defendant served as a liaison between plaintiff and its customers. (*Id.* at ¶¶ 8–9) Defendant was the main technical point of contact for customers with questions related to specialty laboratory services. (*Id.* at ¶ 9)

Defendant entered into an employment contract ("Employment Agreement") with plaintiff. (*Id.* at ¶ 12) The Employment Agreement contains several restrictive covenants, including a non-disclosure covenant, a non-solicitation covenant, and a non-compete covenant. (*Id.* at ¶¶ 12–14) The Non-Disclosure Covenant states:

> During Employee's employment with the Company and thereafter, Employee shall not, without the Company's prior permission, directly or indirectly, utilize or disclose to anyone outside of the Company, or permit access by unauthorized persons or entities to, any Confidential Information, and shall take all reasonable precautions to prevent any person or entity access to any of the Confidential Information, other than as required in the performance of Employee's duties for the Company. Employee shall not, directly or indirectly, copy, take, send, or remove from the Company's premises or computer systems (except with the written consent of Company), any of the Company's books, records, client lists, electronic data information, or any other documents or materials containing Confidential Information, other than as required in the performance of Employee's duties with Company. Under no circumstances shall Employee utilize any, or disclose to any

third parties, the Company's Confidential Information after Employee's termination with Company.

(*Id.* at ¶ 13)

Under the Non-Solicitation Covenant defendant shall not, directly or indirectly:

(a) Solicit, service, or contact any Restricted Customer for the purpose of providing products or services competitive with those conducted, authorized, offered or provided by the Company;
(b) Market, sell, or attempt to market or sell any products or services competitive with those conducted, authorized[,] offered or provided by the Company to any Restricted Customers[.]

(*Id.* at ¶ 14)

The Non-Competition Covenant states:

[A]s a result of your employment with the Company, you have been given access to various trade secrets and confidential customer lists of the Company.  In consideration of your employment by the Company and of the opportunity to receive the Retention Bonus granted under this letter agreement, you agree that, during your employment with the Company and twelve (12) months following the termination of your employment with the Company for any reason, you shall not, directly or indirectly: (a) Within any state in the United States in which the you performed services, had responsibility for, or about which you had access to confidential information for the Company, hold any position, or engage in any activities as an employee, agent, contractor, or otherwise, with any party that competes with the Company if such position or activities involve: (i) responsibilities similar to responsibilities you had or performed for the Company; (ii) supervision of employees or other personnel in the provision of services that are similar to or competitive with those offered or provided by the Company; (iii) development or implementation of strategies or methodologies related to the provision of services similar to or competitive with the services offered or provided by the Company; or (iv) responsibilities in which you would utilize or disclose Confidential Information.

(*Id.* at ¶ 15)

Finally, the Employment Agreement also contains a forum selection clause, which states:

This Agreement shall be construed under, governed by and enforced in accordance with the laws of the State of Delaware, without applying its conflicts of laws principles. The exclusive venue for any litigation between Employee and Company based upon any fact, matter or claim arising out of or relating to this Agreement shall be the federal or state courts in the State of Delaware, and

3

>Employee hereby consents to any such court's exercise of personal jurisdiction over him/her for such purpose.

(*Id.* at ¶ 4)

On March 27, 2020, defendant resigned from his position as plaintiff's Technical Director. (*Id.* at ¶ 26) Less than a month later, defendant began working for Houston-based A&B Labs, plaintiff's direct competitor. (*Id.* at ¶ 27) Plaintiff alleges that defendant, in carrying on his new employment with A&B Labs, violated restrictive covenants in the Employment Agreement giving rise to claims for breach of contract and misappropriation of trade secrets in violation of the Delaware Uniform Trade Secrets Act ("DUTSA"), 6 Del. C. § 2001, *et seq.* (*Id.* at ¶¶ 31–54) Plaintiff seeks injunctive and monetary relief. (*Id.* at 21–22)

## III.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) allows a defendant to move to dismiss for improper venue. The movant has the burden of proving that venue is improper in the selected forum. *See Myers v. American Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982). The question of whether venue is wrong or improper is generally governed by 28 U.S.C. § 1391. *See Atlantic Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 55 (2013). Section 1391 provides that "[a] civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

4

When venue is challenged, the court must determine whether the case falls within one of the three categories set forth in § 1391(b).  *See Atlantic Marine*, 571 U.S. at 56.  "If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)."  *Id.*  "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause."  *Id.* at 55.  "[A] contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)."  *Id.* at 56.  As a result, a case filed in a district that falls within the venue requirements of § 1391 may not be dismissed under § 1406(a)[3] or Rule 12(b)(3).  *Id.*

### B.  Transfer of Venue

Section 1404(a) of Title 28 of the United States Code grants district courts the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interests of justice . . . to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).

"[F]orum selection clauses are presumptively valid and enforceable absent a showing by the resisting party that enforcement of the clause would be unreasonable under the circumstances."  *Asphalt Paving Sys., Inc. v. Gannon*, 2015 WL 3648739, at *3 (D.N.J. June 11,

---

[3] Transfer pursuant to § 1406(a) deals with curing venue defects.  28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").  By contrast, transfer pursuant to § 1404 is not conditioned on the initial forum being the "wrong" venue, instead it addresses the convenience of the parties.  28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."); *see also Chen v. Sagrera*, C.A. No. 16-385-RGA, 2017 WL 4001568, at *4, 6 n.9 (D. Del. Sept. 11, 2017) (comparing § 1404 and § 1406 and noting that "Section 1404(a) provides a mechanism for enforcement of forum selection clauses that point to a particular federal district").

2015) (citing *M/S Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 10 (1972)).  In the Third Circuit, when facing a valid forum selection clause, a district court modifies its analysis three ways:

> First, no weight is given to the plaintiff's choice of forum.  Second, the court does not consider arguments about the parties' private interests.  Instead, 'a district court may consider arguments about public-interest factors only.'  Third, 'when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules – a factor that in some circumstances may affect public-interest considerations.'

*In re McGraw-Hill Global Education Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018) (internal citations omitted) (quoting *Atlantic Marine*, 571 U.S. at 63–64).[4]  "Because [public interest] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."  *Atlantic Marine*, 571 U.S. at 64.  For example, transfer should not be granted if it would inefficiently result in fragmentation of the litigation.  *See ABC Med. Holdings, Inc. v. Home Med. Supplies, Inc.*, 2015 WL 5818521, at *9 (E.D. Pa. Oct. 6, 2015).

### C.  Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all well pleaded factual allegations in

---

[4] When conducting a transfer analysis under § 1404(a) without an applicable forum selection clause, district courts use their discretion to balance various private and public interest factors. *In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 401–02 (3d Cir. 2017).  Unlike the private interest factors, which "relate to 'the convenience of the parties and witnesses,'" the public interest factors "derive from 'the interest of justice'" and "are not necessarily tied to the parties" before the court.  *Id.* at 402 (quoting 28 U.S.C. § 1404(a)).  The public interest factors include: (1) "the enforceability of the judgment"; (2) "the relative administrative difficulty in the two fora resulting from court congestion"; (3) "the local interest in deciding local controversies at home"; (4) "the public policies of the fora"; (5) and "the familiarity of the trial judge with the applicable state law in diversity cases."  *Id.* (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995)).  These enumerated public interest factors "include judicial economy considerations."  *Id.*

the complaint and view them in the light most favorable to the plaintiff. *See Umland v. Planco Fin. Servs. Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); s*ee also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## IV.     DISCUSSION

### A.     Transfer of Venue

Defendant argues venue is improper because none of the three categories listed in 28 U.S.C. § 1391 are satisfied. *See Atlantic Marine*, 571 U.S. at 56 ("When venue is challenged, the court must determine whether the case falls within one of the three categories set out in §

1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a).").

The court acknowledges the § 1391(b) categories are not satisfied in the instant case.[5] However, the facts of the pending case are analogous to those wherein the District of New Jersey recognized that strict application of the holding in *Atlantic Marine* to a "polar opposite" factual scenario would vitiate forum selection clauses. *See Howmedica Osteonics Corp. v. Howard*, 2020 WL 1102494, at *4 n.3 (D.N.J. Jan. 17, 2020). In *Atlantic Marine*, the plaintiff filed suit in a proper venue according to § 1391 but in contravention of the forum selection clause which defendants sought to enforce. *Atlantic Marine*, 571 U.S. at 52. Here, as in *Howmedica*, the case differs from *Atlantic Marine* because it originated in the forum prescribed in the contract, but the preselected venue does not fit into the § 1391(b) categories. *See Howmedica*, 2020 WL 1102494, at *4 n.3. As noted in *Howmedica*, "*Atlantic Marine* has caused divergence in the caselaw, and some courts" have adopted an interpretation of *Atlantic Marine* "whereby the [district courts] must conduct an independent venue analysis under § 1391(b), irrespective of the terms of a forum selection clause, and dismiss or transfer the case if venue does not lie under the federal venue statute." *Id.* at *4 (collecting cases). The court declined to adopt an interpretation of *Atlantic Marine* "that would abrogate the widely accepted principle that objections to venue

---

[5] First, defendant does not reside in Delaware for purposes of § 1391(b)(1). Under § 1391(c)(1), defendant "shall be deemed to reside in the judicial district in which that person is domiciled." 28 U.S.C. § 1391(c)(1). The parties do not dispute that defendant is domiciled in Spring, Texas, a suburb of Houston. (D.I. 1, Ex. A at ¶ 2; D.I. 7, Ex. A at ¶ 2)
    Second, no "substantial part of the events or omissions giving rise to [plaintiff's] claim[s] occurred" within the Delaware federal judicial district. 28 U.S.C. § 1391(b)(2). As alleged, all of the events giving rise to plaintiff's claims occurred in Texas, specifically the Houston area. (D.I. 1, Ex. A at ¶¶ 8, 27–28) The complaint contains no allegation of any event occurring within the District of Delaware.
    Third, § 1391(b)(3) does not apply because there is a "district in which an action may otherwise be brought as provided in this section"—the Southern District of Texas.

8

are waivable." *Id.* at *5 (citations omitted). This court agrees with *Howmedica's* well-reasoned analysis and finds "[v]enue may be proper . . . if a party has consented to suit in a particular district, thus having waived any right to challenge venue." *Chen v. Sagrera*, C.A. No. 16-385-RGA, 2017 WL 4001568, at *4 (D. Del. Sept. 11, 2017); *see also Howmedica*, 2020 WL 1102494, at *5 (quoting *Wall Street Aubrey Golf, LLC v. Aubrey*, 189 F. App'x 82, 87 (3d Cir. 2006)) (noting that "parties can agree to venue among themselves").

Moreover, defendant has not posed a convincing challenge to the validity of the forum selection clause.[6] Instead, he urges a strict application of the venue statute. (D.I. 7 at 3; D.I. 15 at 4–6) However, if the court were to arguably grant the transfer to the Southern District of Texas, then the Texas court, sitting in a statutorily proper venue, would have to interpret the forum selection clause and decide whether it requires transfer back to the District of Delaware. *See Howmedica*, 2020 WL 1102494, at *5 ("[U]nder defendants' interpretation of *Atlantic Marine*, only a court having statutorily proper venue could enforce an otherwise enforceable forum selection clause. The Court does not read *Atlantic Marine* to require or allow such bifurcation of the powers and duties of the federal district courts."). Because public interest factors rarely defeat forum selection clauses, it is reasonably likely that the Texas court would find this case properly belongs in Delaware. *See Atlantic Marine*, 571 U.S. at 64 ("Because [public interest] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."). This court fails to see the practicality

---

[6] Defendant argues primarily that Texas is a more convenient forum without elaborating on any public interest factors or challenging the validity of the forum selection clause. (D.I. 7 at 4–7; D.I. 15 at 6) Plaintiff counters that forum selection clauses are presumptively valid and enforceable. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972) (holding that "the forum clause should control absent a strong showing that it should be set aside"); *MySize, Inc. v. Mizrahi*, C.A. No. 15-1061-SLR, 193 F. Supp. 3d 327, 334 (D. Del. 2016) (internal alterations and citations omitted) ("A forum selection clause is presumptively valid.").

or judicial efficiency of having the case bounce between venues.  There are no infirmities in this court's enforcement of the forum selection clause when venue is waivable, and the result otherwise is delay and consumption of resources in two district courts.  Accordingly, defendant's motion to transfer venue is denied.  *See Howmedica*, 2020 WL 1102494 at *5 (quoting *Park Inn Int'l, L.L.C. v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 375 (D.N.J. 2000) (adopting "the line of well-reasoned decisions recognizing that '[w]here a defendant has waived its objection to venue, the Court may hear the matter, even though venue would not otherwise be proper under section 1391.'").

> B. Motion to dismiss under Rule 12(b)(6)
>> 1. Breach of Contract

To state a claim for breach of contract under Delaware law, a plaintiff must allege facts sufficient to plausibly infer the existence of "(1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) resulting damage to the plaintiff[ ]." *Greenstar, LLC v. Heller*, C.A. No. 10-746-SLR, 814 F. Supp. 2d 444, 450 (D. Del. 2011) (citing *WaveDivision Holdings, LLC v. Millennium Dig. Media Sys.*, L.L.C., 2010 WL 3706624, at *13 (Del. Ch. Sept. 17, 2010)).

Defendant argues plaintiff failed to state a plausible breach of contract claim because the complaint contains no allegations of defendant's actual breach of the restrictive covenants in the Employment Agreement.  (D.I. 7 at 7–8; D.I. 15 at 6–7)  Plaintiff argues the complaint contains sufficient factual allegations of the essential elements of a breach of contract claim to survive a Rule 12(b)(6) motion.  (D.I. 12 at 9–10)

Plaintiff's complaint contains plausible allegations of defendant's actual breach.  Accepting the well pleaded allegations in the complaint as true, defendant started working for

A&B Labs, plaintiff's competitor, less than a month after his employment with plaintiff ended. (D.I. 1, Ex. A at ¶¶ 26–27)  Plaintiff avers defendant "threatens to, and may have already, solicited Restricted Customers on behalf of A&B Labs."  (*Id.* at ¶ 36)  Plaintiff also alleges that "since [defendant] joined A&B Labs, [plaintiff] learned that one of its long-standing customers recently transitioned to A&B Labs.  Upon information and belief, [defendant] directly or indirectly solicited the customer on behalf of A&B Labs in breach of his obligations to [plaintiff]."  (*Id.* at ¶ 37)  Plaintiff argues, and the court agrees, that the allegations plausibly allege defendant's breach of the restrictive covenants in the Employment Agreement based "on [defendant's] skills and qualifications, public sources regarding A&B Labs services, and upon information and belief."  (*Id.* at ¶¶ 29–30; D.I. 12 at 10)  Therefore, the court recommends denying defendant's motion to dismiss plaintiff's breach of contract claim.

### 2. Misappropriation of Trade Secrets

Defendant also argues plaintiff failed to state a claim for misappropriation of trade secrets under the Delaware Uniform Trade Secrets Act.  (D.I. 7 at 8)  Defendant argues two points: (1) the Delaware Uniform Trade Secrets Act does not apply to him, and (2) plaintiff failed to allege facts that defendant "threatened or actually did misappropriate any trade secret."  (*Id.*)  Defendant did not cite any authority to support his first argument; therefore, the court summarily rejects it.  *See Conroy v. Leone*, 316 F. App'x 140, 144 n.5 (3d Cir. 2009).

The notice pleading standard of Federal Rule of Civil Procedure 8 applies to claims made pursuant to the Delaware Uniform Trade Secrets Act.  *Eastman Chem. Co. v. AlphaPet Inc.*, C.A. No. 09-971-LPS-CJB, 2011 WL 5402767, at *3 (D. Del. Nov. 4, 2011).  To state a misappropriation of trade secrets claim under the Delaware Uniform Trade Secrets Act, "a plaintiff must identify a trade secret with sufficient particularity so as to provide notice to a

11

defendant of what he is accused of misappropriating and for a court to determine whether misappropriation has or is threatened to occur." *Power Integrations, Inc. v. Silanna Semiconductor N. Am., Inc.*, C.A. No. 19-1292-LPS, 2020 WL 3508078, at *2 (D. Del. June 29, 2020) (quoting *Flexible Techs., Inc. v. SharkNinja Operating LLC*, C.A. No. 18-348-CFC, 2019 WL 1417465, at *2 (D. Del. Mar. 29, 2019)). However, the plaintiff need not disclose the trade secret "in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets." *SharkNinja*, 2019 WL 1417465, at *2 (quoting *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 636 (D. Del. 1991)).

Plaintiff has alleged facts sufficient to provide notice to defendant of what he is accused of misappropriating. *See Power Integrations*, 2020 WL 3508078, at *2. In *Eastman*, for example, the plaintiff sufficiently pleaded a misappropriation claim where the complaint alleged "a specific illicit pathway (involving its former employees) through which confidential information flowed, and allege[d] the time period and a set of relevant events . . . that was the impetus for the alleged wrongful disclosure and use." *Eastman*, 2011 WL 5402767, at *9 (also noting that the complaint need not "allege every act taken in support of the alleged wrong-doing, or every time and date when such acts occurred" to satisfy *Twombly*). Like *Eastman*, plaintiff has alleged that defendant received confidential information related to plaintiff's environmental laboratory business. (D.I. 1, Ex. A at ¶ 21) Plaintiff also alleges the timeline of events during which defendant learned of plaintiff's confidential information and misappropriated that information. (*Id.* at ¶¶ 26–30) In particular, plaintiff alleges the discrete areas of direct competition between it and defendant's new employer, which further provides "sufficient notice about the nature of the trade secrets alleged to have been misappropriated." *See SharkNinja*,

2019 WL 1417465, at *3.  Therefore, the court recommends denying defendant's motion to dismiss plaintiff's misappropriation of trade secrets claim.

## V.     CONCLUSION

For the foregoing reasons:

(1) Defendant's motion to transfer venue pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406 or 28 U.S.C. § 1404(a) is DENIED (D.I. 6).  This portion of the memorandum opinion is nondispositive and subject to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2).

(2) In addition, the court recommends that defendant's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) be DENIED.  This portion of the Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1(a)(3).

The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  Fed. R. Civ. P. 72(a)-(b)(2).  The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: July 28, 2020

_____
Sherry R. Fallon
United States Magistrate Judge